CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 03 2004

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHER GRANSBY, ) | |
| Plaintiff, ) | Civil Action No. 7:03CV00107 |
| v. ) | |
| ) | |
| D.A. BRAXTON, et al. ) | By: Michael F. Urbanski |
| Defendants. ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

In this action pursuant to 42 U.S.C. § 1983 for monetary damages and injunctive relief, plaintiff Christopher Gransby, a Virginia inmate proceeding pro se, originally alleged that defendants, officials at Red Onion State Prison ("Red Onion") and Sussex I State Prison ("Sussex I"), violated his Eighth Amendment right to be free from cruel and unusual punishment by exposing him to unreasonable levels of second-hand smoke.

In an order dated August 27, 2004, Judge Samuel G. Wilson granted summary judgment to the defendants on Gransby's claims for against officials at Red Onion. The undersigned held an evidentiary hearing on October 13, 2004 regarding plaintiff's claims for injunctive relief at Sussex I state prison following a motion for summary judgment filed by defendants. For the reasons outlined below, the undersigned recommends that all remaining defendants be granted summary judgment regarding Gransby's requests for an injunction requiring him to be housed in a pod with a non-smoking common area at Sussex I.

I

At the hearing, plaintiff Gransby indicated that he was transferred to Sussex I on November 5, 2001 and placed into cell that he shared with a non-smoker. Gransby contends that

approximately half of eighty-eight inmates currently housed in the pod sharing his common area are smokers. Although the rules at Sussex I require common areas to be smoke-free, plaintiff contends that these rules are routinely violated by both prison officials and prisoners, and that, in his experience, both groups smoke in common areas with impunity. Gransby also concedes that he has been housed with non-smoking cell mates during his stay at Sussex I.

At Sussex I, inmates spend approximately twenty hours a day in their cells and approximately four hours a day in either the common areas of their pod or outside in the prison yard. The common areas of the pod have high ceilings and have forty-four cells attached, housing a capacity of eighty-eight inmates. The ventilation system at the prison is designed to segregate the air from the cells from the air from the common areas. Gransby admits that he could avoid the smoke in his common area either by returning to his cell during the times they are permitted to use the common area or by requesting transfer to segregation status. He contends that either of these alternatives would require him to give up some of the limited privileges attendant to prison life were he to choose them to get away from smoke. Returning to his cell during times when he is permitted to be in the common area would make him unable to use of the showers or to get a haircut. Segregation, he indicated, was something for people who are in trouble and should not be something forced upon inmates who just desire being housed in a smoke-free environment. In Gransby's mind, such decisions should be unnecessary.

Gransby further indicated that although there are no non-smoking areas designated in the common area of his pod, the smoke in the common area tends to be worse in the center of the pod and that inmates who are particularly sensitive to the smoke can avoid it to a degree by hiding behind building supports or congregating away from the center of the room. Gransby also

2

admitted that returning to his cell for the most part freed him from the cloud of smoke that he alleges occurs in the common room.

Testimony at the hearing by Doug Faircloth, the Buildings and Grounds Superintendent of Sussex I, indicated that the common areas of the pods and the cells are on separate ventilation systems, and that they were designed to cause the air in them to move away from one another. Faircloth claimed that it was impossible for Gransby to be bothered by smoke coming from the common area while housed in his cell.

Tonya Taylor, Director of Nursing at Sussex I, testified at the hearing Gransby had neither sought medical services because of second-hand smoke nor filed a grievance with prison authorities about smoking in the common area. Taylor testified that Gransby's only medical complaints since transferring to Sussex I have been for joint pain and for periodic bouts of dizziness and that he had been diagnosed with high blood pressure. Though Gransby implied that the dizziness was caused by smoke, he was unable to provide any support for the notion aside from his belief that his diet and age could not be causes as he was young and ate kosher meals.

Finally, Captain D. Miller, Housing Unit Captain, testified that smoking was not allowed in the common areas of pods, but that in the ten days following the hearing, Gransby's pod is being converted into a non-smoking pod. In such a pod, no smoking would be allowed anywhere in the pod, including both the cells and the common area, and that no smoking materials would be allowed in the pod. Miller testified that the reason non-smoking pods had not been created earlier was because of the need to determine whether the individuals housed in the non-smoking pod were compatible in the sense that housing them together at close quarters would not lead to

3

violence. Though Gransby disagreed with their contentions that this was the cause of the delay, he admitted that he would be satisfied if placed in a non-smoking pod.

## II

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981). To state an Eighth Amendment claim concerning prison conditions, plaintiff must allege facts sufficient to show that he has sustained a serious or significant mental or physical injury as a result of the challenged condition. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir.), cert. denied, 510 U.S. 949 (1993). However, the Supreme Court of the United States has held that a plaintiff "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke or second-hand smoke] that pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35-36 (1993).

Determining whether second-hand smoke conditions violate the Eighth Amendment "requires more than a scientific and statistical inquiring into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [second-hand smoke]." Id. Plaintiffs must demonstrate two objective elements: (1) they are being exposed to unreasonably high levels of second-hand smoke; and (2) society will not tolerate his exposure to this risk. Id.; see also Simmons v. Sager, 964 F. Supp. 210, 212 (W.D. Va. 1997).

McKinney, the plaintiff in Helling, had complained that his future health was at risk because he was housed in a cell with an inmate who was a five-pack-a-day smoker. Id. at 35. In that decision, the Court noted that at the time it was made, McKinney might lose on a similar claim because since he had filed his claim, he was no longer housed with the five-pack-a-day

4

smoker, and additionally, the prison had adopted policies restricting smoking in common areas and giving wardens the authority to designate non-smoking housing. Id. at 36.

What Gransby alleges is occurring in Sussex I is both infinitely less serious than what was occurring in Helling and also not a constitutional violation under the Eighth Amendment. Though exposing prison inmates to close confinement with a five-pack-a-day smoker is a constitutional violation under Helling, courts have not expanded the reach of that ruling. Failure to rigidly enforce nonsmoking rules is not adequate to state a claim for relief under the Eighth Amendment. Boblett v. Angelone, 942 F. Supp. 251, 253 (W.D. Va. 1996), aff'd, 121 F.3d 697 (4th Cir. 1997). Similarly, confinement of a prisoner in an area where the only accessible common areas have smoke-filled air is not a violation under the Eighth Amendment. Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir.), cert. denied, 493 U.S. 969 (1989); Steading v. Thompson, 941 F.2d 498, 500 (7th Cir. 1991); Clemmons v. Bohannon, 956 F.2d 1523, 1528 (10th Cir. 1992) (en banc). In Boblett, the court was easily satisfied that a modicum of under-enforced rules fell short of establishing a constitutional violation. 942 F. Supp. at 253. "While it may be true that prison officials could take additional measures to ameliorate the environmental conditions to which plaintiff is exposed, the Constitution does not require [them] to provide ideal conditions for convicted prisoners. Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

As such, were this court required to reach this decision, it would find that Gransby's allegations do not rise to the level of a constitutional violation. However, because his claim can be dismissed for other reasons, such decisions can be left for other days.

5

## III

Gransby's claim should be dismissed because he has not exhausted his administrative remedies under 42 U.S.C. § 1997e(a). Section 1997e(a) of the Prison Litigation Reform Act of 1955 ("PLRA") requires a prisoner to exhaust <u>all</u> available administrative remedies prior to filing an action under § 1983. Prisoners must not just initiate grievances, they must also appeal any denial of relief through all levels of administrative review that comprise the administrative grievance process. See Booth v. Churner, 532 U.S. 731 (2001); Langford v. Couch, 50 F. Supp. 2d 544, 547 (E.D. Va. 1999). There is no indication in the record that Gransby filed a grievance or even a complaint regarding his confinement at Sussex I in a pod where he had to share a common area with smokers. Regardless of the merits of his constitutional claim, finds that it is proper to dismiss Gransby's claim because he failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

## IV

Finally, the decision of Sussex I prison officials to create non-smoking pods effectively moots Gransby's remaining claim. Cases where there are no longer active controversies are moot and not suitable for review in federal court. See Arizonans for Official English v. Arizona, 520 U.S. 43, 68 (1997). "To qualify as a case fit for federal court adjudication, an actual controversy must be extant at all stages of review...." Id. at 67 (internal quotation marks and citations omitted). The Arizonans Court found moot a suit to enjoin a law requiring state employees to use only English after the sole plaintiff left state employment for the private sector. Id. at 68. Similarly, in Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991), the Fourth Circuit found that a prisoner's request for injunctive relief from unlivable prison conditions became moot when he

was transferred to another prison. Here, plaintiff wants to be housed in a non-smoking pod. The affidavit of Captain D. Miller filed on October 28, 2004 states that Sussex I prison has "recently completed the formation of a totally non-smoking inmate housing unit," Miller Aff. at ¶ 2, which effectively moots Gransby's claim for injunctive relief.

V

The undersigned recommends that the defendants' motion for summary judgment be **GRANTED** and this case be stricken from the active docket. The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to filed specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is hereby also directed to send a certified copy of this Report and Recommendation to all counsel of record.

Enter this 2nd day of November, 2004.

Michael F. Urbanski
United States Magistrate Judge